UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYER HOFFMAN MCCANN, P.C.,<br><br>Plaintiff,<br><br>v.<br><br>CAMICO MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 15-cv-01207-SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 24, 25 |

On December 4, 2015, the Court held a hearing on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court DENIES MHM's motion for partial summary judgment and GRANTS CAMICO's motion for summary judgment.

**BACKGROUND**

On March 13, 2015, plaintiff Mayer Hoffman McCann PC ("MHM") filed this lawsuit against defendant CAMICO Mutual Insurance Company, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief, and reformation. Plaintiff's claims arise out of a dispute regarding the terms of a Reinstatement Endorsement contained in an Accountants Professional Liability Insurance Policy issued by CAMICO to MHM for the 2007-2008 policy year. MHM contends that under the Reinstatement Endorsement, CAMICO was required to cover two large claims against MHM, after MHM exhausted its policy limits in its primary policy with CAMICO with respect to those two claims. CAMICO contends that the plain language of the Reinstatement Endorsement provides that limits are not reinstated on

1  claims for which CAMICO has already paid MHM defense and/or indemnity expenses under the
2  primary policy.
3        Now before the Court are the parties' cross-motions for summary judgment.  MHM seeks
4  summary judgment on its claims for breach of contract and declaratory relief.  Under both claims,
5  MHM contends that pursuant MHM's expectation of coverage, CAMICO's internal and external
6  documents, and under the terms of the CAMICO policy, CAMICO is required to provide
7  reinstated coverage for the two claims that exhausted the primary limits of the policy.  In the
8  alternative, MHM seeks summary judgment on its claim for reformation, on the theory that
9  reformation of an insurance policy is available when there has been a mutual mistake and/or
10 scrivener's error regarding the terms of the agreed contract.  CAMICO seeks summary judgment
11 on MHM's claims for breach of contract, declaratory relief, reformation, and breach of the
12 covenant of good faith and fair dealing, as well as on CAMICO's counter-claims for declaratory
13 relief and reimbursement.  CAMICO contends that the policy language is clear and unambiguous
14 that reinstatement of coverage is not available on any claims for which claim expenses or damages
15 have been paid in whole or in part by the policy's original limit of liability.  CAMICO further
16 contends that there is no basis for reformation of the policy because there was no mutual mistake
17 of fact or scrivener's error, and the Reinstatement Endorsement was approved by MHM's
18 insurance broker.  CAMICO seeks reimbursement in the amount of $1,450,707.84, plus interest,
19 which is the amount that CAMICO contributed in excess of the original $5 million aggregate
20 policy limit towards settlement of one of the claims.

## I.   Parties and policy language

MHM is a public accounting firm organized as a corporation under the laws of the State of Missouri and headquartered in Leawood, Kansas.  Compl. ¶ 6.  Defendant CAMICO is an insurance company incorporated in California and headquartered in San Mateo, California.  *Id*. ¶ 6.  CAMICO issued an Accountants Professional Liability Insurance Policy, Policy No. KSL103721-03, to MHM for the period December 31, 2007 to December 31, 2008 (the "CAMICO 2007-2008 Policy").  The CAMICO 2007-2008 Policy had a $5 million per claim limit

1  and an original policy aggregate limit of $5 million.[1]  The CAMICO 2007-2008 Policy was the
2  primary policy in an "insurance tower" providing a total of $25 million in insurance to MHM
3  during that policy period.  First Interstate Fire and Casualty Company provided $5 million in the
4  first layer of excess insurance above the CAMICO Policy.  Theus Decl. ¶ 14.  Lexington Insurance
5  Company provided an additional $10 million in excess insurance.  *Id*.  Catlin Insurance Company
6  provided the final $5 million in excess insurance in the $25 million "insurance tower."  *Id*.

7  Pursuant to a special endorsement, the CAMICO 2007-2008 Policy provided for
8  "reinstatement" of CAMICO's primary policy limits after the $25 million "insurance tower" had
9  been exhausted.  The Reinstatement Endorsement states, in relevant part,

> Upon payment by the *Named Insured*, or on its behalf by an excess liability insurer(s), of $20,000,000 in *Claims Expenses* and/or *Damages* with respect to Claims that would otherwise have been covered by this Policy but for the exhaustion of the Policy's $5,000,000 Limit of Liability-Policy Aggregate, the Company agrees thereafter to reinstate the *Named Insured's* $5,000,000 Limit of Liability-Policy Aggregate under this Policy, EXCEPT THAT, the reinstated Limit of Liability–Policy Aggregate shall not apply to any *Claim* for which *Claim Expenses* and/or *Damages* have been or are paid in whole or in part by the Policy's original Limit of Liability-Policy Aggregate.

15  CAMICO Ex. 3 at 72.

## II.   Negotiation of the Reinstatement Endorsement

The 2007-2008 CAMICO Policy is a renewal of Policy No. KSL103721-02, issued by CAMICO to MHM for the period of December 31, 2006 to December 31, 2007.  CAMICO Ex. 1. The 2006-2007 Policy was the first policy to include the Reinstatement Endorsement, and the language of the endorsement was identical in both the 2006-2007 Policy and the 2007-2008 Policy.  *Id*.; Theus Decl. ¶¶ 3-4; Hecht Decl. ¶ 12; *compare* CAMICO Ex. 1 at 34 (2006-2007 Policy) *with* CAMICO Ex. 3 at 72 (2007-2008 Policy).

MHM was represented by Lemme Insurance Group in negotiating the terms of the reinstatement endorsement.  Theus Decl. ¶¶ 4, 11; Hecht Decl. ¶¶ 2-3, 7 , 9, 12.  John T. Hecht is an insurance broker formerly employed by Lemme as an executive Vice-President, and Mr. Hecht

---

[1] The policy is found in CAMICO's Compendium of Exhibits in support of CAMICO's motion for summary judgment, at Exhibit 3.

supervised the placement of professional liability insurance for MHM. Mr. Hecht supervised Brad Barkin, another Lemme broker who was involved in negotiating the terms and conditions of the 2006-2007 Policy. Hecht Decl. ¶¶ 1, 3. Gwen Theus was the primary underwriter on the CAMICO 2006-2007 Policy, and she worked with several other CAMICO employees, including Richard Rosario and Ron Klein, in underwriting the 2006-2007 Policy. Theus Decl. ¶¶ 2-3;

MHM has submitted evidence showing that on October 3, 2006, the then-President of MHM, William Hancock, and MHM's National Director of Operations, Angela Snider, met with Richard Rosario of CAMICO to discuss MHM's contemplated purchase of a reinstatement of limits under the 2006-2007 Policy. Hancock Decl. ¶ 4; Snider Decl. ¶ 2. John Hecht participated in the meeting via telephone. Hecht Decl. ¶ 2. On October 16, 2006, Mr. Hecht instructed Mr. Barkin to obtain a quote from CAMICO for a primary policy with a $5 million primary limit plus a $5 million reinstatement layer. *Id.* ¶ 3. On December 5, 2006, Messrs. Hecht and Barkin provided CAMICO with quotes from excess insurers for the "first tower" in order for CAMICO to provide pricing for the "second tower" of reinstated coverage. *Id.* ¶ 5.

In an email dated December 6, 2006, Mr. Hecht provided CAMICO with draft wording for the reinstatement coverage. MHM Ex. 7. That email states,

> Gwen,
>
> Per our conversation, the following is language that could be used to describe the "second tower" coverage:
>
> "It is understood and agreed that this policy is to provide $5,000,000 x $20,000,000, subject to a per claim limit of $20,000,000."
>
> or
>
> "In the event of reduction or exhaustion of the "First Loss Program" by reason of Claims paid thereunder, the is [sic?] policy shall:
>
> In the event of reduction, pay the excess of the reduced First Loss Program;
>
> In the event of exhaustion, continue in force as primary insurance.
>
> It is further agreed that the following definition of "First Loss Program" shall be added to the policy:
>
> First Lost Program means the underlying coverage of $20,000,000 each claim as follows:

4

> Primary $5,000,000 - Camico
>
> $5,000,000 xs. $5,00,000 Fireman's Fund
>
> (List …..)
>
> All other terms and conditions remain unchanged"
>
> Please let me know if you have any questions or want to run through some more examples.
>
> Thanks!
>
> Regards,
>
> John

MHM Ex. 7.

In response, on December 7, 2006 CAMICO sent MHM its own proposal for the reinstatement endorsement. Hecht. Decl. ¶ 7; Theus Decl. ¶ 7[2]; MHM Ex. 8 (CAMICO's proposal). CAMICO's proposal stated that the "[l]imits below are only available in conjunction with the renewal of CAMICO Policy Number KSL103721-01 and applicable to a second loss during the applicable policy year and are excess of any limits remaining in first loss tower." MHM Ex. 8 at Bates Stamped 0060. The proposal also set forth the limiting language found in the Reinstatement Endorsements to the 2006-2007 Policy and the 2007-2008 Policy. *Compare* MHM Ex. 8 (Dkt. 25-6) and CAMICO Ex. 3 at 72. Specifically, CAMICO's December 7, 2006 proposed reinstatement endorsement language stated:

> Upon payment by the *Named Insured*, or on its behalf by an excess liability insurer(s), of $20,000,000 in *Claims Expenses* and/or *Damages* with respect to *Claims* that would otherwise have been covered by this Policy but for the exhaustion of the Policy's $5,000,000 Limit of Liability−Policy Aggregate, the Company agrees thereafter to reinstate the *Named Insured's* $5,000,000 Limit of Liability−Policy Aggregate under this Policy, EXCEPT THAT, the reinstated Limit of Liability-Policy Aggregate shall not apply to any Claim for which Claim Expenses and/or Damages have been or are paid in whole or in part by the Policy's original Limit of Liability – Policy Aggregate.

MHM Ex. 8. With regard to that proposal, Mr. Hecht now states,

---

[2] MHM objects to a sentence in paragraph 7 of Ms. Theus's declaration regarding CAMICO's intent in offering reinstatement coverage. The Court does not rely on this statement in reaching its conclusions because the Court finds that the plain language of the policy controls. MHM also objects to CAMICO's citation to articles about reinstatement coverage. The Court does not rely on these articles in reaching its conclusions.

> On December 7, 2006, CAMICO prepared and issued its proposal for the reinstatement coverage layer, which was then provided to MHM (the "Proposal"). Exhibit "8". The proposal matched MHM's expectations of coverage, and Lemme's communications with CAMICO, in that the proposal noted that the reinstated limit would apply to a "second loss during the applicable policy year" which would be in excess of the initial policy limit.

Hecht Decl. ¶ 7.[3] Mr. Hecht also now states "[t]here was nothing in the Proposal that suggested any limitation on coverage rights under the reinstatement coverage layer if there was a partial payment of one or more claims under the initial primary policy." *Id*. ¶ 8.  In an email dated December 27, 2006, Mr. Barkin informed Ms. Theus (with a cc to Mr. Hecht), "I wanted to advise you that Mayer Hoffman McCann has given us the instructions to bind the terms you quoted for the primary $5,000,000 in coverage with a $500,000 per claim and . . . Mayer Hoffman would also like to bind the second loss coverage layer of $5,000,000 . . . ."  MHM Ex. 9; Hecht Decl. ¶ 9. The 2006-2007 Policy came into effect on December 31, 2006. Hecht Decl. ¶ 9; Theus Decl. ¶ 8.

Ms. Theus states that "the basic core coverages and endorsements to be renewed were agreed upon by CAMICO and MHM by the time of the renewal on December 31, 2006. However, as is typically the case with respect to large corporate accounts like this one, after December 31, 2006, CAMICO and MHM's broker, LEMME, were still negotiating the exact terms of several special endorsements to the renewal policy, including the terms of the Reinstatement Endorsement to be added to the policy." Theus Decl. ¶ 8. On April 11, 2007, Ms. Theus forwarded by email to Mr. Barkin, with a cc to Mr. Hecht, a copy of the CAMICO manuscript Reinstatement Endorsement that CAMICO proposed to be offered as part of the renewal coverage under the CAMICO 2006-2007 Policy. CAMICO Ex. 2. The wording of the Reinstatement Endorsement was the same as proposed by CAMICO in its December 7, 2006 proposal. *See* Hecht. Decl. ¶ 7; Theus Decl. ¶ 7; MHM Ex. 8 (CAMICO's December 7, 2006 proposal); CAMICO Ex. 2 (April 11, 2007 Reinstatement Endorsement). The next day, Mr. Hecht

---

[3] In MHM's reply to its motion for partial summary judgment, and in its opposition to CAMICO's motion for summary judgment, MHM asserts − in contradiction to its own exhibit − that the December 7, 2006 proposal from CAMICO did not contain the Reinstatement Endorsement language that was ultimately adopted. However, MHM's Exhibit 8, which MHM identifies as CAMICO's December 7, 2006 proposal for the reinstatement coverage layer, includes this language. *See* MHM Ex. 8 (Indeed, the Court notes that the chambers copy provided by MHM has this language highlighted.)

1    responded by email, stating, *inter alia*, "I agree with how the reinstatement wording reads," and
2    "we went through the policy in detail with MHM yesterday . . . ." CAMICO Ex. 2; MHM Ex. 14

3    On September 3, 2008, Mr. Barkin emailed Ms. Theus asking that CAMICO revise the
4    Reinstatement Endorsement to show that the total excess limits were $20 million, not $15 million,
5    and that Lexington Insurance Company's limits were $10 million, not $5 million, excess of the
6    $10 million layer. Theus Decl. ¶ 16; CAMICO Ex. 4. Ms. Theus states that "Mr. Barkin did not
7    ask for the Reinstatement Endorsement to be amended or revised in any other way either before or
8    after the issuance of the CAMICO 2007-2008 Policy." Theus Decl. ¶ 16.

9    MHM renewed its coverage with CAMICO for the period December 31, 2008 to
10   December 31, 2009, and that policy contained the same Reinstatement Endorsement as the
11   previous two policies. Theus Decl. ¶¶ 17-18; CAMICO Ex. 5.

### III.   *Signature Financial Group* and *In re: Mortgages* Claims

In 2008, MHM provided notice of two claims that were assigned to MHM's 2007-2008 Policy year. On or about June 4, 2008, MHM provided notice to CAMICO of a subpoena MHM had received from the Securities and Exchange Commission requesting copies of MHM's work papers prepared on behalf of Medical Capital Holdings, Inc. ("MedCap"). CAMICO appointed defense counsel to assist MHM in responding to the SEC's subpoena. On or about April 5, 2011, MHM was named as a defendant in *Signature Financial Group, Inc. v. Mayer, Hoffman, McCann, P.C. et al.*, Case No. 00463492 (Orange County Superior Court) (the "*Signature Financial* Lawsuit"), as a result of professional services rendered by MHM for MedCap and its subsidiaries. CAMICO agreed to provide a defense to MHM for the *Signature Financial* Lawsuit under the CAMICO 2007-2008 Policy. The *Signature Financial* Lawsuit was deemed reported to CAMICO when CAMICO first received notice in June 2008 of the SEC subpoena relating to the MedCap work papers.[4]

---

[4] According to MHM's motion for summary judgment, Signature Financial Group, Inc. was a California-based company that was alleged to have fraudulently withheld or misrepresented information to investors in MedCap and its related companies. The broker-dealer plaintiffs alleged that MHM had failed to recognize or disclose financial irregularities in MedCap's

7

On or about June 25, 2008, MHM provided notice to CAMICO of a subpoena served on MHM for testimony in a bankruptcy action entitled *In re Mortgages, Ltd.*, Case No. 2:08-bk-07465-RJH (United States Bankruptcy Court, Ariz.). CAMICO appointed defense counsel to assist MHM in responding to the *In re Mortgages, Ltd.* subpoena. In or about 2009, MHM was named as a defendant in several lawsuits filed in the Superior Court for the State of Arizona and in the United States District Court for the District of Arizona as a result of professional services rendered by MHM for Mortgages, Ltd. (collectively "the *Mortgages, Ltd.* Lawsuits"). CAMICO provided a defense to MHM in the *Mortgages, Ltd.* Lawsuits under the CAMICO 2007-2008 Policy. The *Mortgages, Ltd.* Lawsuits were deemed reported to CAMICO in June 2008 when CAMICO first received notice of the *In re Mortgages, Ltd.* subpoena.

CAMICO paid out its full aggregate limit of $5 million in policy limits under the CAMICO 2007-2008 Policy in the payment of claims expenses and/or damages in the *Mortgages, Ltd.* Lawsuits and the *Signature Financial* Lawsuit. CAMICO states that it paid a total of $3,549,292.16 in claim expenses for the *Mortgages Ltd.* Lawsuits and a total of $1,450,707.84 in claim expenses for the *Signature Financial* Lawsuit. Dkt. 28 at 10. MHM's Chairman William Hancock states in his declaration that reasonable and necessary defense fees and costs, and reasonable settlement costs, for the *Mortgages* litigation have exceeded $23,913,231 to date, and reasonable and necessary defense fees and costs, and reasonable settlement costs, for the *Signature Financial* litigation have exceeded $9,150,295. Hancock Decl. ¶ 9. In April 2013, CAMICO ceded the defense of those claims to Interstate Fire & Casualty Company, the first excess insurer in the $25 million "insurance tower." CAMICO, Interstate, Lexington and Catlin exhausted their limits of liability in payment of defense expenses and settlements. Hancock Decl. ¶ 9.

In or about April 2014, MHM advised CAMICO that one of the *Mortgages, Ltd.* lawsuits was in the process of mediation and it was expected the settlement would exhaust the approximately $6 million in remaining limits of the $25 million "insurance tower." Aubrey Decl. ¶ 13. Pursuant to the Reinstatement Endorsement, MHM requested that CAMICO contribute

---

operations that would have avoided financial investments in a Ponzi scheme which resulted in significant financial losses. Dkt. 26 at 3.

funds to settle that lawsuit. *Id*. ¶ 13; CAMICO Ex. 9. CAMICO declined to pay anything further in settlement of the *Mortgages, Ltd.* Lawsuits based on its view that the 2007-2008 Policy did not provide reinstatement for the *Mortgages, Ltd.* Lawsuits because CAMICO had already exhausted the original policy aggregate limit of $5 million in payment of claims expenses for those lawsuits. Aubrey Decl. ¶ 14.

On July 7, 2014, CAMICO filed a declaratory relief lawsuit in the United States District Court of the Central District of California, seeking a declaration that there is no reinstatement of the limits of the CAMICO 2007-2008 Policy for the *Mortgages, Ltd.* Lawsuits or the *Signature Financial* Lawsuit. *Id.* ¶ 15. In August 2014, while the declaratory relief action was pending, MHM and CAMICO entered into a Contribution and Reservation of Rights Agreement, under which CAMICO agreed to pay $1,450,707.84 towards settlement of one the *Mortgages, Ltd.* lawsuits, subject to a full reservation of rights and without prejudice to the claims pending in the declaratory relief action. *Id*. ¶ 16. On September 10, 2014, CAMICO paid the $1,450,707.84 toward the settlement of one of the *Mortgages, Ltd*. lawsuits. *Id*. ¶ 17.

On September 18, 2014, the declaratory relief action was dismissed without prejudice pursuant to the parties' stipulation. *Id*. ¶ 18. The parties engaged in mediation, which was unsuccessful, and on March 13, 2015, MHM filed this lawsuit. *Id*.

## LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then-Fed. R. Civ. P.

56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## DISCUSSION

MHM does not seriously dispute that the plain language of the Reinstatement Endorsement excludes reinstated coverage for the *Mortgages* and *Signature Financial* Claims because CAMICO paid expenses and/or damages on both claims under the original limit of liability on the 2007-2008 Policy. Instead, MHN contends that the limitation of coverage contained in the Reinstatement Endorsement was contrary to the parties' express intent and understanding and was not conspicuous, and therefore that CAMICO cannot rely upon the language of the Reinstatement Endorsement to limit coverage. CAMICO contends that the plain language of the Reinstatement Endorsement is unambiguous and must be enforced, and that the Reinstatement Endorsement is not inconspicuous.

### I.   Interpretation of policy/parol evidence

MHM contends that the limiting language of the Reinstatement Endorsement is contrary to the expectations of the parties (or at least contrary to MHM's expectations). MHM's motion for

partial summary judgment asserts, "there can be no dispute that MHM requested, CAMICO quoted, and the parties understood during the entirety of the underwriting process that MHM was seeking coverage that would respond to one large loss (one full coverage tower, up to $25 million, which in this case might be considered the Mortages Claim, for which the initial $5 million CAMICO Policy would exhaust given the nearly $24 million in defense and settlement costs to date), with a second and smaller coverage tower available for a second loss ($10 million in reinstated coverage, which in this case might be considered the Signatures Claim, for which the $5 million reinstated Policy limit would exhaust given the more than $9 million in defense and settlement costs)." Dkt. 26 at 13:18-25.

In support of its interpretation of the policy as providing for reinstated policy limits for claims for which Claim Expenses were partially paid under the original policy limits, MHM relies on the declarations of William Hancock, John Hecht, and Angela Snider, as well as documents prepared by MHM and CAMICO regarding the Reinstatement Endorsement.[5] For example, Mr. Hancock states in his declaration that during the October 3, 2006 meeting between himself, Ms. Snider, Mr. Hecht, and Mr. Rosario, "I expressly advised Mr. Rosario that we wanted to be protected against a single, significant claim that might exhaust an entire coverage limit (anticipated to be $20 or $25 million), and that we would then want and need additional coverage that would be available for one or more other claims." Hancock Decl. ¶ 2. Similarly, regarding that same meeting, Mr. Hecht states, "Mr. Hancock made it expressly clear to Mr. Rosario that

---

[5] MHM has also submitted a letter from Interstate Insurance Co., dated September 30, 2011, in which Interstate provides its interpretation of the CAMICO policy as providing reinstated coverage for the *Mortgages Ltd.* and *Signature Financial* Claims. MHM Ex. 31. In that letter, Interstate states, *inter alia*, "it has always been the intent of Interstate that Interstate's second tower position of $5,000,000 excess of $5,000,000 was meant to apply as a $5,000,000 limit of liability that could apply to any matter reported in the first tower, *provided that in no event would Interstate pay more than $5,00,000 on any one matter regardless of whether the matter was initially reported in the first or second tower.* Interstate's second tower (reinstated) limit of liability will not apply to any matter until the first $25,000,000 tower of insurance is exhausted and further will not apply until Camico's $5,000,000 underlying layer is exhausted."

The Court agrees with CAMICO that this letter is irrelevant as Interstate is not a party to the contract, and the letter was prepared years after the contract was negotiated and issued. MHM asserts that this letter is relevant because Interstate's reinstatement coverage is worded identically to the CAMICO Reinstatement Endorsement. However, as CAMICO's counsel noted at the hearing, the Interstate policy is not in evidence.

MHM was seeking protection against a single substantial claim, with the potential to exhaust MHM's entire coverage tower (anticipated to $20 million or $25 million), while also protecting against other additional serious, yet less substantial, claims." Hecht Decl. ¶ 2; *see also* Snider Decl. ¶ 2 ("Discussion was held regarding a second tower of that would be available in the event a large claim exhausted the first tower."). MHM has also submitted copies of PowerPoint presentations prepared by Mr. Hancock regarding MHM's needs for coverage, as well as copies of notes written by Mr. Hancock and Ms. Snider during their meetings with CAMICO representatives about insurance needs, including MHM's need for reinstatement coverage, also referred to by the parties as "round the clock" coverage. *See* MHM Ex. 1-2, 16.

CAMICO responds that MHM is improperly relying on parol evidence to support an interpretation of the Reinstatement Endorsement that is directly at odds with the plain language of the endorsement. CAMICO notes that that the 2007-2008 Policy is an integrated agreement. *See* CAMICO Ex. 3 at 56 (Section titled "Entire Contract," which states: "By accepting this policy, each Insured agrees that the statements in the Declarations and in each application for renewal or supplementary application are his/her agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between each Insured and the Company or any of its agents relating to this insurance."). CAMICO argues that parol evidence may only be used to prove a meaning to which the language of an integrated contract is reasonably susceptible. *See Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co*., 69 Cal.2d 33, 37 (1968).

The interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., In*c., 11 Cal.4th 1, 18 (1995). "The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id*. "'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.'" *Haynes v. Farmers Ins. Exch*., 32 Cal.4th 1198, 1204 (2004) (quoting *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1115 (1999)). Accordingly, insurance policies "must be interpreted to give effect to the mutual intent of the parties at the time of contracting, and such intent is ascertained, if possible, from the

12

clear and explicit language of the contract." *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*, 111 Cal.App.4th 1234, 1243 (2003) (internal citation and quotations omitted).  "If contractual language is clear and explicit, it governs.  On the other hand, when policy language is ambiguous, rules applicable to resolving ambiguity control." *Id*. (citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264-1265 (1992)).  "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & E. Co.*, 69 Cal.2d at 37.  "And although parol evidence may be admissible to determine whether the terms of a contract are ambiguous, it is not admissible if it contradicts a clear and explicit policy provision." *George v. Automobile Club of S. Cal*., 201 Cal.App.4th 1112, 1121 (2011) (internal citations and quotation marks omitted).

The Court finds that the Reinstatement Endorsement is not reasonably susceptible to MHM's proffered interpretation because MHM's interpretation is directly contrary to the terms of the Reinstatement Endorsement.  The Reinstatement Endorsement states that the limits do not reinstate for "any Claim for which Claim Expenses and/or Damages have been paid or are being paid in whole or in part by the Policy's original Limit of Liability-Policy Aggregate." CAMICO Ex. 3 at 72.  This language is clear and unambiguous -- the policy does not reinstate limits towards any Claim for which any part of the original CAMICO policy limits were paid, whether for defense or indemnity.

The Court also concludes that MHM's parol evidence is inadmissible to contradict the clear and explicit policy terms.  *See George*, 201 Cal.App.4th at 1121; *see also ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co*., 17 Cal.App.4th 1773, 1791 (1993) (extrinsic evidence may not be admitted to demonstrate that the words of an insurance policy mean the exact opposite of their plain and ordinary meaning); Cal. Code Civ. Proc. § 1856 (the parol evidence rule).  Thus, the Court will not consider the statement in Mr. Hecht's declaration that "[t]here was nothing in [CAMICO's December 7, 2006] Proposal that suggested any limitation on coverage rights under the reinstatement coverage layer if there was a partial payment of one or more claims under the

13

initial primary policy." Hecht Decl. ¶ 8. In fact, CAMICO's December 7, 2006 proposal, which contained the Reinstatement Endorsement language at issue, unambiguously stated that coverage would not reinstate for such claims. For the same reason, the Court finds inadmissible statements by Mr. Hecht, Mr. Hancock and Ms. Snider that CAMICO never suggested any limitation on reinstated coverage based on the partial payment of one or more claims under the initial primary policy, as those statements are directly contrary to the language of the Reinstatement Endorsement. *See* Hecht Decl. ¶ 10; Hancock Decl. ¶¶ 5-8; Snider Decl. ¶ 3.[6] *See also American Star Ins. Co. v. Ins. Co. of the West*, 232 Cal.App.3d 1320, 1331 (1991) ("[E]vidence of a policyholder's 'intent' is also unavailing against the plain language of the policy. A policyholder's 'reasonable expectation' of coverage is only relevant when the policy is ambiguous."); *Wolf Machinery Co. v. Ins. Co. of North America*, 133 Cal.App.3d 324, 329 (1982) (holding that where policy language was unambiguous, declaration of insured's president in opposition to summary judgment that he expected insurance policy to provide coverage did not create material fact requiring denial of summary judgment).[7]

MHM contends that coverage under the Reinstatement Endorsement is illusory if it is enforced as written. MHM argues that "under this 'claims made and reported policy,' there is only a small window of time for both a claim to be made, and the claim to be reported, during the one-year Policy period. Once reported, the Claim then requires the appointment of defense counsel,

---

[6] MHM argues that CAMICO had a duty to disclose that the Reinstatement Endorsement did not provide the coverage that MHM requested. The Court discusses this argument in Section II.

[7] The Court also notes that some of the parol evidence submitted by MHM does not actually contradict the language of the Reinstatement Endorsement. For example, Mr. Hancock and Ms. Snider both state that during the October 3, 2006, meeting with Ric Rosario of CAMICO, Mr. Hancock discussed MHM's need for a second insurance tower "to be protected against a single, significant claim that might exhaust an entire coverage limit. . . , and that we would then want and need additional coverage that would be available for one or more other claims." Hancock Decl. ¶ 2; *see also* Snider Decl. ¶ 2. The Reinstatement Endorsement would provide coverage for one or more other claims as long as CAMICO did not pay any amounts on those claims under the original limit of liability. Similarly, there is nothing in Mr. Hancock's PowerPoint presentations regarding MHM's insurance needs, or in the notes taken by Mr. Hancock or Ms. Snider, that contradict the terms of the Reinstatement Endorsement.

14

1      and costs are incurred. With a $5 million policy limit, the original limit will remain in play
2      potentially for years, meaning every Claim under the Policy would have been noticed, and every
3      claim would be subject to defense costs, negating a right to reinstated coverage." Dkt. 29 at
4      18:19-24.
5           "In order for a contract to be valid, the parties must exchange promises that represent legal
6      obligations." *Scottsdale Ins. Co. v. Essex Ins. Co*., 98 Cal.App.4th 86, 94-95 (2002). "An
7      agreement is illusory and there is no valid contract when one of the parties assumes no obligation."
8      *Id*. at 95. CAMICO asserts that the Reinstatement Endorsement is not illusory, and has submitted
9      the second Declaration of Mark Aubrey as support. Dkt. 28-1. Mr. Aubrey states that MHM
10     reported a total of 16 matters during the 2007-2008 Policy period, and that CAMICO paid Claim
11     Expenses only on the two matters at issue in this action. Aubrey Decl. ¶¶ 3-4, Ex. 1. Mr. Aubrey
12     states that there are 14 other claims or potential claims that could trigger coverage under the
13     Reinstatement Endorsement assuming all other requirements for coverage were met. *Id*. ¶ 5.
14     Based upon this record, the Court finds that the policy is not illusory because there are conditions
15     under which reinstated coverage would exist. *See Scottsdale Ins. Co. v. Essex Ins. Co*., 98
16     Cal.App.4th 86, 94-95 (2002); *see also Fagundes v. American Int'l Adjustment Co.*, 2 Cal.App.4th
17     1310, 1317-18 (1992).

19     **II.   Conspicuousness**
20          To be enforceable, "any provision that takes away or limits coverage reasonably expected
21     by an insured must be 'conspicuous, plain and clear.'" *Haynes*., 32 Cal. 4th at 1204 (quoting
22     *Steven v. Fidelity & Casualty Co*., 58 Cal.2d 862, 878 (1962)). "Thus, any such limitation must be
23     placed and printed so that it will attract the reader's attention. Such a provision also must be stated
24     precisely and understandably, in words that are part of the working vocabulary of the average
25     layperson." *Haynes*, 32 Cal. 4th at 1204. "The burden of making coverage exceptions and
26     limitations conspicuous, plain and clear rests with the insurer." *Id*.
27          MHN contends that the purported limitation of coverage in the reinstatement endorsement
28     is inconspicuous because (1) the limitation was not included on the first page of the endorsement,

15

which otherwise described the policy's limits of liability and maximum payment obligations; (2) the limitation was not individually identified by any numbered heading, or by a descriptive heading that would indicate an important coverage limitation; and (3) the limitation was included in the bottom of a paragraph regarding the underlying coverage program requirements.

The Court finds that the reinstatement endorsement is conspicuous, plain and clear. In a "Notice" located at the front of the 2006- 2007 and 2007-2008 Policies, MHM is advised, in bold font:

> **This policy contains additional restrictions on coverage.  Please review this policy carefully, including the Declarations and all endorsements.**

CAMICO Ex. 1 at 7; Ex. 3 at 44 (bold in original). The Reinstatement Endorsement is two pages long. CAMICO Ex. 1 at 33-34; Ex 3 at 71-72. The Reinstatement Endorsement states at the top of the first page, in bold and capital letters: "**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE CAMICO PROFESSIONAL LIABILITY POLICY. PLEASE READ CAREFULLY.**" CAMICO Ex. 1 at 33; Ex 3 at 71 (emphasis in original). The initial paragraph of the Reinstatement Endorsement states that the policy limits will reinstate "under certain circumstances, as follows: . . . ." *Id*. The third numbered paragraph contains the language at issue in this case:

> Upon payment by the Named Insured, or on its behalf by an excess liability insurer(s), of $20,000,000 in Claims Expenses and/or Damages with respect to Claims that would otherwise have been covered by this Policy but for the exhaustion of the Policy's $5,000,000 Limit of Liability-Policy Aggregate, the Company agrees thereafter to reinstate the Named Insured's $5,000,000 Limit of Liability-Policy Aggregate under this Policy, EXCEPT THAT, the reinstated Limit of Liability-Policy Aggregate shall not apply to any Claim for which Claim Expenses and/or Damages have been or are paid in whole or in part by the Policy's original Limit of Liability- Policy Aggregate.

CAMICO Ex. 3 at 72. This language is in the same font size as the rest of the endorsement. The limitation of coverage begins with "EXCEPT THAT. . . ." Thus, the Reinstatement Endorsement conspicuously advised MHM that the language following "EXCEPT THAT" would be a limitation on reinstatement of policy limits. *See Palub v. Hartford Underwriters Ins. Co.*, 92 Cal. App. 4th 645, 652 (2001) (holding exclusion in endorsement was conspicuous, plain and clear because endorsement was one page long, set forth in bold print in all capital letters and in type of

16

1   reasonable size, and the cover sheet of the policy warned policyholders to "read your policy
2   carefully" and stated that the attached endorsements may limit coverage), *disapproved on other*
3   *grounds in Julian v. Hartford Underwriters Inc. Co.*, 35 Cal. 4th 747 (2005); *Cf. Haynes*, 32 Cal.
4   4th at 1206-07 (holding permissive user limitation on automobile coverage found in endorsement
5   was not conspicuous because, *inter alia*, limitation was located on the back of the policy,
6   limitation was identified on "declarations" page only by alphanumeric designation ("S9064")
7   along with 10 other endorsements, declarations page did not alert reader to fact that endorsement
8   limited coverage, and language of limitation was "not bolded, italicized, enlarged, underlined, in
9   different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the
10  fine print.").

11        The Court also finds it significant that the Reinstatement Endorsement was specifically
12  negotiated by MHM, a sophisticated insured, through its broker Lemme, and that MHM through
13  Lemme approved the language at issue. The evidence before the Court shows that Mr. Hecht
14  drafted language that CAMICO rejected, and that CAMICO responded with proposed language
15  prior to MHM's renewal of the 2007-2008 Policy, and that was reviewed and explicitly approved
16  by MHM's broker. *See* MHM Ex. 7-9; Hecht Decl. ¶¶ 7, 9; CAMICO Ex. 2. Thus, not only is the
17  Reinstatement Endorsement language conspicuous, but it was the specific focus of the parties'
18  negotiations. This fact also undercuts MHM's assertion that CAMICO failed to disclose that the
19  Reinstatement Endorsement did not provide the type of coverage that MHM was seeking.

20        The Court finds that the cases cited by MHM addressing an insurer's breach of its duty to
21  disclose are inapposite. Those cases hold that "once an insurer or its agent elects to respond to an
22  insured's questions about coverage, a special duty arises which requires them to use reasonable
23  care to provide accurate information." *Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090, 1098
24  (1996) (insurance company's agent could be liable for negligently misrepresenting that a
25  "replacement cost coverage" provision was sufficient to replace all lost or damaged property
26  regardless of policy limits when policy did not provide such coverage); *see also id*. at 1097-1100
27  (discussing cases); *Westrick v. State Farm Ins.*, 137 Cal. App. 3d 685 (1982) (holding insurance
28  company's agent may be liable for his negligent failure to accurately apprise an insured of his

policy terms upon request; insured alleged that agent was negligent in failing to inform him that a commercial truck would not be covered under his existing passenger car policy when the insured sought assurances that it would be). Unlike the insureds in *Paper Savers* and *Westrick* who were provided inaccurate information by the insurance companies' agents, here MHM was represented by its own broker in negotiating the Reinstatement Endorsement, and MHM's broker explicitly approved the language at issue.

### III.  Resolution of claims and counterclaims

Based on the foregoing, the Court concludes that CAMICO is entitled to summary judgment on MHM's claims for breach of contract, declaratory relief, breach of the covenant of good faith and fair dealing, and reformation. The original aggregate policy limit under the 2007-2008 Policy was exhausted by CAMICO's payments on the *Signature Financial* and *In re: Mortgages* claims, and coverage for those two claims did not reinstate under the Reinstatement Endorsement. Accordingly, CAMICO did not breach the insurance policy or otherwise breach the covenant of good faith and fair dealing, and MHM is not entitled to declaratory relief.

The Court also concludes that MHM has not shown any basis for reformation of the insurance policy. "As a general rule, a written contract, having been deliberately executed, is presumed to correctly express the parties' intentions." *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal.App.3d 1, 19 (1989). "California Civil Code section 3399 allows reformation of a contract when, through mistake, it fails to express the true agreement of the parties." *Id*. "[The] mistake may be the mutual error of both parties to the contract, or the oversight of one party which the other knew or suspected at the time of entering the agreement." *American Home Ins. Co. v. Travelers Indemnity Co.*, 122 Cal. App. 3d 951, 961 (1981). MHM has not introduced any evidence showing that there was a mutual mistake with regard to adopting the language of the Reinstatement Endorsement. Nor has MHM introduced any evidence showing an oversight by MHM which CAMICO knew or suspected at the time of entering the agreement.

Accordingly, the Court GRANTS summary judgment in favor of CAMICO on MHM's claims.[8]

The Court also GRANTS summary judgment in favor of CAMICO on CAMICO's counterclaims for declaratory relief and holds that the limits of the 2007-2008 Policy are not reinstated for the *Mortgages, Ltd.* Lawsuits or the *Signature Financial* Lawsuit. The Court also holds that CAMICO is entitled to reimbursement from MHM in the amount of $1,450,707.84, plus interest at the legal rate, for the amount CAMICO contributed in excess of the original $5 million aggregate policy limit towards settlement of one of the *Mortgages, Ltd.* lawsuits.

## CONCLUSION

For the foregoing reasons, the Court DENIES MHM's motion for partial summary judgment and GRANTS CAMICO's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: February 17, 2016

_____
SUSAN ILLSTON
United States District Judge

---

[8] MHM argues that CAMICO's motion for summary judgment should be denied on procedural grounds because CAMICO submitted a separate statement of facts that did not comply with the Civil Local Rules. The Court finds that this procedural deficiency is not a basis for denying CAMICO's motion.